IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL P. BLALOCK, JR., | No.  2:21-CV-0962-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| PATRICK COVELLO, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner currently housed at the Mule Creek State Prison, located in Ione, California. See ECF. No. 1. Plaintiff brings suit against the following defendants: (1) Patrick Covello, Warden; and (2) Sierra Roberts, Registered Nurse. Id. Plaintiff alleges the violation of his Eighth and Fourteenth Amendment rights when he refused to take a COVID-19 test, but subsequently was placed on quarantine, and when prison officials allowed potentially infected inmates to be moved from cell to cell. Id. at 3-4.

In his first claim, Plaintiff states that Defendant Covello directed his subordinates to suspend the rights and privileges of inmates upon refusal of a COVID-19 test. Id. at 3. Plaintiff references a policy, implemented on July 28, 2020, that the California Department of Corrections and Rehabilitation (CDCR) may allow inmates to refuse COVID-19 tests without retaliation. Id. Plaintiff filed a Health Care Grievance on an unspecified date but received a response on January 13, 2021. Id. at 8. The response stated the following in relevant parts:

> According to quarantine policy, on or around July of 2020, there are multiple reasons for quarantining a building and/or close contacts. This can include, but is not limited to, direct exposure to someone who has tested positive for COVID-19 or someone who shows symptoms of influenza-like-illness (ILI), overnight stay in the hospital, or Emergency room visit.
>
> * * *
>
> The California Department of Corrections and Rehabilitation and California Correctional Health Care Services (CCHS) have protocols in place that follow recommendations for quarantines set forth by the Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease in Correctional Detention Facilities.* This guidance is specific for correctional facilities and detention centers during the outbreak of COVID-19 to ensure continuation of essential public services and protection of the health and safety of incarcerated and detained

2

persons.

Id. at 9.

The response letter references no policy that allows an inmate to refuse a COVID-19 test without retaliation. The only pertinent part regarding Plaintiff's claim states, "If a patient refuse testing for release, continue quarantine for another seven days before release. Re-offer testing, if the patient ultimately agrees to the test, and the results are negative, they may be released before the seven days are up." Id. at 9. Because Plaintiff refused a COVID-19 test, he was placed on quarantine from October 27, 2020, until January 27, 2021. Id. at 4. During this time, a sign was placed on Plaintiff's door:

> FAILURE TO TEST
>
> Medical Quarantine Required
>
> CELL A-206
>
> Compliance with future testing protocols will allow removal from quarantine.
>
> No yard access, no dayroom access, no phone access. Showers every 72 hours.
>
> Cell door shall remain locked while other inmates are on dayroom.
>
> Testing is essential to return to phase 2.

Id. at 11.

Plaintiff claims that, while in quarantine, he was denied any form of contact with his family, yard access, work, medical treatment, and proper hygiene. Id. at 4. Plaintiff's rights and privileges were restored when he voluntarily consented to a COVID-19 test on February 16, 2021. Id. at 3. Plaintiff alleges violation of his Fourteenth Amendment rights because he was denied deprived various liberties during quarantine without due process. Id. at 4.

In his second claim, Plaintiff further alleges that "Administration" has moved potentially infected COVID-19 inmates from cell to cell and building to building, thus exposing many inmates to COVID-19. Id. Plaintiff claims that he was impacted by these alleged poor protocols because he was placed on quarantine. Id. During his quarantine, Plaintiff states that he was denied phone access, clean linen, or cleaning products. Id. Plaintiff was very apprehensive

during his quarantine and heavily considered his worth as a human being. Id.  The facts are unclear if Plaintiff received a false positive result, displayed symptoms of COVID-19, or had been in direct exposure to an inmate that tested positive for COVID-19.  Plaintiff alleges the violation of his Eighth Amendment rights because he felt that his life was endangered, especially given that he had pre-existing medical conditions. Id. at 4.

Plaintiff is seeking an injunction that prevents the transfer of inmates without proper compensation. Id. at 6.  Plaintiff is also seeking compensation of $250,000 for the reckless endangerment and deliberate indifference for the quality of his life. Id.

## II.  DISCUSSION

In his first claim, Plaintiff alleges a violation of his Fourteenth Amendment due process rights by Defendant Covello, the prison warden, when Plaintiff was placed in quarantine for refusing a COVID-19 test.  In his second claim, Plaintiff alleges a violation of his Eighth Amendment rights when prison officials allowed potentially infected inmates to be moved throughout the prison, thereby creating a risk to Plaintiff's health.  Each substantive claim is addressed below.  In addition, the Court addresses Plaintiff's failure to allege any facts showing a causal link between Defendant Roberts, a prison nurse, and any constitutional violation.

### A.  **Causal Link**

While Plaintiff names Roberts as a defendant to this action in the caption and list of defendants, he does not include any specific factual allegations as to this defendant in either of his two claims.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Because there is a possibility that the failure to include factual allegations regarding Defendant Roberts was due to an oversight, and given Plaintiff's pro se status, the Court will grant Plaintiff an opportunity to amend the complaint. If Plaintiff elects to do so, he should keep the principles outlined above in mind in drafting his amended pleading.

### B. Analysis of Substantive Claims

#### 1. Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the Court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

///

///

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Supreme Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

Applying the foregoing, the Court concludes that Plaintiff fails to state a cognizable due process claim, under either the Due Process Clause of the Fourteenth Amendment or state law. As to the Due Process Clause, Plaintiff does not have any protected liberty interest in remaining in the general population or having access to privileges. Thus, Plaintiff's placement in quarantine away from the general population during which he lost various privileges does not implicate Plaintiff's due process rights. As to state law, the Court finds that placement in quarantine is akin to placement in administrative segregation and, thus, did not restrain Plaintiff's liberty in a manner inconsistent with his incarceration. The Court also finds that, while somewhat atypical given the circumstances of the pandemic, Plaintiff's brief placement in quarantine did not create a significant hardship.

Finally, because Plaintiff has not alleged sufficient facts to implicate his due process rights, Defendant Covello cannot be liable for implementation of the quarantine policy. Recognizing that Plaintiff is proceeding pro se and that due process claims are necessarily somewhat complex factually, the Court will grant Plaintiff an opportunity to amend.

2. Eighth Amendment

In his second claim, Plaintiff alleges that his health was put at risk when the "Administration" allowed potentially infected inmates to be moved about the prison.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts

of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from harm. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

The Court finds that Plaintiff's Eighth Amendment claim is, as currently framed, too vague and speculative to proceed. First, Plaintiff has not alleged that he was incarcerated under conditions creating a substantial risk to his health. To the contrary, Plaintiff alleges that he was placed in quarantine where he was separated and thus protected from infection. Second,

Plaintiff has not alleged facts to show that prison officials were aware of an actual risk and disregarded it. Again, according to Plaintiff, he was placed in quarantine. This shows that prison officials took the risk of infection seriously and acted accordingly. Finally, Plaintiff states the risk to his safety came from potentially infected inmates. In other words, Plaintiff alleges nothing more than a mere suspicion of danger.

The facts alleged do not establish either the subjective or objective elements of an Eighth Amendment claim. Plaintiff will be provided an opportunity to amend. If Plaintiff elects to do so, he should keep in mind the principles above relating to the requirement to allege facts to show a causal link. As currently pleaded, Plaintiff's second claim against unnamed "Administration" officials fails to do so, even assuming Plaintiff otherwise pleaded sufficient facts to establish the subjective and objective elements of his claim.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

As has been explained above, if Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See

May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated:  October 18, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE